IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-02610-PAB

RUTH ANNE VALDEZ,

    Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

    Defendant.

___

## ORDER
___

This matter is before the Court on the Complaint [Docket No. 1] filed by plaintiff Ruth Anne Valdez on October 31, 2017. Plaintiff seeks review of the final decision of defendant Andrew M. Saul (the "Commissioner")[1] denying her claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-34, 1381-83f. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).[2]

---

[1] On June 4, 2019, the Senate confirmed Andrew M. Saul as Commissioner of Social Security. Accordingly, Mr. Saul is substituted for Nancy A. Berryhill, former Acting Commissioner of Social Security, as defendant in this lawsuit. *See* Fed. R. Civ. P. 25(d).

[2] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

## I. BACKGROUND

On April 11, 2014, plaintiff filed an application for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, alleging a disability onset date of September 15, 2011. R. at 11, 89, 102. Her claims were initially denied on August 28, 2014. R. at 89, 101-02, 114. On March 10, 2016, plaintiff appeared at a hearing before an administrative law judge ("ALJ") to testify regarding her disability. R. at 49. On June 15, 2016, the ALJ issued a decision denying plaintiff's claims. R. at 11, 26. The ALJ found that plaintiff had

> severe impairments of anxiety, depression, obsessive compulsive disorder, and personality disorder as well as a group of physical impairments considered severe in combination consisting of carpal tunnel syndrome, obesity, osteoarthritis of the bilateral knees, and degenerative disc disease.

R. at 13. The ALJ concluded that these impairments, alone or in combination, did not meet or medically equal one of the regulations' listed impairments. R. at 14. The ALJ further determined that plaintiff had the residual functional capacity ("RFC") to perform less than a "full range of light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following, specific limitations:

> [Plaintiff] is limited to lifting, carrying, pushing, and/or pulling up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking about 6 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday. She is limited to frequent climbing of ramps and stairs, frequent balancing, occasional stooping, crawling, and kneeling, and no climbing of ropes, ladders, or scaffolds. The claimant can perform frequent handling. She is able to understand, remember, and carry out tasks learned in up to and including 6 months with frequent interaction with co-workers, supervisors, and the public and no work that involves teamwork.

R. at 16-17.  Based on this RFC and in reliance on the testimony given by a vocational expert ("VE") at the March 2016 hearing, the ALJ determined that plaintiff was capable of performing her past relevant work as a group leader.  R. at 24.  In the alternative, the ALJ found that plaintiff had the RFC to perform three jobs existing in significant numbers in the national economy: laundry aide, assembler, and utility person.  R. at 25-26.  Each of these positions is performed at a light exertional level, is classified as unskilled, and has a specific vocational level ("SVP") level of two.  *Id.*

On September 1, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's decision.  R. at 1.  In light of the Appeals Council's denial, the ALJ's decision is the final decision of the Commissioner.

## II.  STANDARD OF REVIEW

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III.  THE FIVE-STEP EVALUATION PROCESS

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006). The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

## IV. DISCUSSION

Plaintiff argues that the ALJ erred by: (1) according little weight to the opinions of Drs. Steven Huett and Jeremy Long; (2) failing to give appropriate reasons for discounting plaintiff's statements regarding the limiting effects of her symptoms; and (3) failing to include plaintiff's moderate limitation in concentration, persistence, or pace in

the hypothetical posed to the VE.  *See* Docket No. 12 at 10-21.[3]  The Court limits its

discussion to the third issue because it is dispositive in this case.

Plaintiff asserts that, although the ALJ determined at step three that plaintiff had

moderate difficulties with concentration, persistence, or pace, the ALJ's hypothetical

question to the VE did not include these or similar limitations.  *Id*. at 20. Defendant

argues, in response, that the ALJ adequately accounted for plaintiff's mental deficits by

limiting her to unskilled work.  Docket No. 13 at 16-17.[4]

The Court agrees with plaintiff that the ALJ's hypothetical question did not

adequately account for the mental limitations found by the ALJ.  In assessing whether

plaintiff's impairments met or medically equaled a listing-level impairment at step three,

the ALJ determined that plaintiff had a moderate limitation in concentration,

persistence, or pace and difficulty "sustaining focus, attention and concentration

sufficiently long enough to permit the timely and appropriate completion of tasks

commonly found in work settings."  R. at 15-16.   At the hearing, however, the ALJ

---

[3] Plaintiff also notes that the ALJ's hypothetical failed to account for plaintiff's moderate limitation in social functioning. *See* Docket No. 12 at 20.  However, she concedes that the ALJ's "limitations to no more than frequent interactions with others and no teamwork could ostensibly account" for this limitation, *id*., and does not press this aspect of her argument in her reply brief.  *See* Docket No. 14 at 3 (arguing only that none of the cases cited by defendant hold that "limitations in concentration, persistence, or pace can be accounted for solely by limitations in learning job tasks"). The Court therefore will not consider it.

[4] The Court notes that neither the RFC nor the hypothetical posed by the ALJ contained a limitation to unskilled work.  *See* R. at 16-17, 82.  Defendant appears to base its argument on the ALJ's alternative finding, at step five, that plaintiff could perform three unskilled jobs existing in significant numbers in the national economy. *See* R. at 25-26.  The Court assumes without deciding that the ALJ's finding had the same effect as a limitation to unskilled work.

asked the VE to consider an individual "at the light exertional level" with the following specific limitations:

> lifting, carrying, pushing, and/or pulling 20 pounds occasionally and 10 pounds frequently; standing and/or walking about six hours in an eight-hour work day; sitting about six hours in a eight-hour work day; frequent climbing ramps and stairs; frequent balancing; occasional stooping and crawling; occasional kneeling; no climbing ladders, ropes, or scaffolds; frequent handling; able to understand, remember, and carry out tasks learned in up to and including six months; and frequent interaction with coworkers, supervisors, and the public; no work that involves teamwork.

R. at 82.[5] In response to the hypothetical, the VE opined that the individual described would be capable of performing plaintiff's past relevant work as a group leader, as well as the jobs of laundry aide, assembler, and utility person, which are classified as unskilled. R. at 82-84. The ALJ subsequently relied on this opinion in finding that plaintiff was not disabled at steps four and five of the sequential evaluation. *See* Docket No. 25-27.

Defendant argues that the ALJ's hypothetical question adequately accounted for plaintiff's difficulties with concentration, persistence, or pace by limiting plaintiff to unskilled work. *See* Docket No. 13 at 16-17. The Court disagrees. As recognized by both the Social Security regulations and Tenth Circuit case law, a claimant's functional

---

[5]Because the dispositive hypothetical mirrored the limitations included in plaintiff's RFC, *see* R. at 16-17, 82, plaintiff's real objection is to the ALJ's RFC assessment, not the hypothetical posed to the VE. *See Fulton v. Colvin*, 631 F. App'x 498, 508 (10th Cir. 2015) (unpublished) (finding that the ALJ's hypothetical to the VE was not flawed because, although it omitted limitations arising from the claimant's mental impairments, it mirrored the claimant's RFC); *see also Smith v. Colvin*, 821 F.3d 1264, 1270 (10th Cir. 2016) ("The administrative law judge had to ask only about the effect of those limitations ultimately assessed . . . ."). Nevertheless, this distinction is immaterial.

ability is distinct from the skill level required to perform a particular job.  *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (fact that jobs were classified as unskilled "accounted for issues of skill transfer, not impairment of mental functions – which are not skills but, rather, general prerequisites for most work at any skill level"); SSR 85-15, 1985 WL 56857, at *6 ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.  A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job."); *Marquez-Hernandez v. Comm'r*, No. 17-cv-01513-MSK, 2018 WL 2328401, at *4 (D. Colo. May 22, 2018) (noting the "well-established distinction between work-related skills . . . and intact or impaired mental function").  Accordingly, functional limitations arising from a claimant's mental impairment will not necessarily be accommodated by a limitation to unskilled work.  *See, e.g.*, *Wiederholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished) (holding that limitation to "simple, unskilled tasks" did not adequately account for the plaintiff's moderate difficulties maintaining concentration, persistence, or pace); *Wayland v. Chater*, 76 F.3d 394, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) (unpublished table decision) (holding that a reduction in skill level failed to account for the plaintiff's deficiencies in concentration, which, the court determined, could "well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work"); *Marquez-Hernandez*, 2018 WL 2328401, at *4 (holding that limitation to unskilled work

was insufficient to account for the ALJ's finding of moderate difficulties as to concentration, persistence or pace). Such is the case here. Nothing in the ALJ's hypothetical or consideration of unskilled work accounted for plaintiff's moderate limitation in concentration, persistence, or pace found at step three of the ALJ's analysis.[6]

The cases cited by defendant do not alter this conclusion. While the cases support the proposition that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity," *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016), they do not purport to create "a blanket rule that a generally-stated limitation to 'unskilled' work will be sufficient to account for any or all mental impairments that the ALJ has found." *Marquez-Hernandez*, 2018 WL 2328401, at *5 (discussing *Smith* and *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015)); *see also Vigil*, 805 F.3d at 1204 (recognizing that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations"). In *Smith*, for example, the court determined that a limitation to "simple tasks and work requiring only routine supervision or only superficial interaction with supervisors and peers" was sufficient to account for the claimant's functional

---

[6] The Court also agrees with plaintiff that the limitations to frequent interaction with others, no teamwork, and "tasks that can be learned in up to and including 6 months" have no apparent relationship to plaintiff's ability to maintain concentration, persistence, or pace. Docket No 14 at 3. *See Petti v. Colvin*, No. 15-cv-0256-WJM, 2016 WL 232775, at *5 (D. Colo. Jan. 20, 2016) (finding that portion of plaintiff's RFC requiring no "work in close proximity to co-workers or supervisors" and "minimal to no direct contact with the public" did not, on its face, account for limitations in concentration, persistence, or pace).

limitations. 821 F.3d at 1269. In that case, however, the physician who assessed the moderate limitations on an evaluation form was specifically instructed that those assessments were intended only to aid his ultimate determination of the claimant's functional capacity, which was to be recorded as a narrative. *See id.* at 1268 n.1. That narrative, which reflected the physician's final assessment of the claimant's functional capacity, included only two limitations, both of which were incorporated into the ALJ's RFC. *See id.* at 1268-69.

Likewise, in *Vigil*, the court found that an RFC limited to unskilled work adequately accounted for the claimant's moderate memory and concentration deficits because the ALJ had determined, at step four, that the claimant "retained enough memory and concentration to perform simple tasks," a limitation commensurate with the demands of unskilled work. 805 F.3d at 1203-04. In *Bales v. Colvin*, 576 F. App'x 792 (10th Cir. 2014) (unpublished), and *Beasley v. Colvin*, 520 F. App'x 748 (10th Cir. 2013) (unpublished), the ALJs similarly qualified the moderate limitations identified at step three, thereby justifying the inclusion of only narrower limitations in their RFC assessments. *See Bales*, 576 F. App'x at 797 (finding no error in the ALJ's RFC assessment where the ALJ accepted, at step three, that the claimant was moderately limited in concentration, persistence, or pace but found that she could "sustain focused attention sufficiently long to permit timely and appropriate completion of tasks commonly found in work settings"); *Beasley*, 520 F. App'x at 754 (finding that the ALJ was not required to incorporate general limitations in social functioning into the RFC where "the ALJ found that, in spite of any limitations in social functioning, [the claimant]

could respond appropriately to supervision, co-workers, the general public, and usual work situations" (internal quotation marks omitted)).

In short, the outcome of each of the cases cited by defendant depended on the existence of additional analysis narrowing or qualifying the moderate functional limitations identified at step three such that there was no inconsistency between the step three findings and the RFC ultimately assessed. *See Marquez-Hernandez*, 2018 WL 2328401, at *6 (distinguishing *Smith*, *Vigil*, and *Bales* on a similar ground). No such analysis exists in this case. To the contrary, the ALJ specifically noted at step three that "[t]he evidence in the record . . . shows that [plaintiff] has some difficulty in sustaining focus, attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings." R. at 15-16. At no point in her RFC assessment did the ALJ qualify this finding or identify more specific limitations that would be accommodated by unskilled work.[7] Accordingly, the RFC assessed by the ALJ and incorporated into the dispositive hypothetical to the VE did not adequately account for plaintiff's moderate difficulties with concentration, persistence, or pace.[8] Because the evidence consequently does not support the ALJ's

---

[7]Although the ALJ found plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms . . . not entirely consistent with the medical evidence" and accorded little weight to certain mental health opinions. AR at 18. These findings do not substitute for an "explanation of why a general limitation to 'unskilled' work would be sufficient to accommodate [p]laintiff's specific mental impairments." *Marquez-Hernandez*, 2018 WL 2328401, at *6 n.2.

[8]This omission was significant because the VE opined that the individual described in the ALJ's original hypothetical would not be capable of performing any work if she was off task fifteen percent of the work day. R. at 85; *see also Wiederholt*, 121 F. App'x at 839 (finding the "omission of the ALJ's more specific findings . . .

finding that plaintiff was capable of performing her past relevant work or other work existing in the national economy, the Court will reverse. *See Wiederholt*, 121 F. App'x at 839-40 (reversing the ALJ's decision that the claimant was not disabled where the hypothetical posed to the VE "omitted, without explanation" the claimant's "moderate difficulties maintaining concentration, persistence or pace"). The Court declines to address plaintiff's remaining objections to the ALJ's decision because they may be affected by the ALJ's treatment of the case on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## V. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff is not disabled is **REVERSED** and **REMANDED** for further proceedings consistent with this order.

DATED June 1, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

particularly significant given that, when the ALJ posed a hypothetical question incorporating all of the limitations found by [the doctor], the VE opined that [the claimant] would be precluded from all work activity").